Sneathen v. Sneathen.

SNEATHEN *et al.* v. SNEATHEN *et al.*, *Plaintiffs in Error.*

DIVISION ONE.

1. **Marriage, Sufficient Evidence of.** The evidence in this case is deemed sufficient to establish a legal marriage.

2. **Conveyance:** UNDUE INFLUENCE. The charge that a conveyance of land was obtained by the fraud, compulsion and undue influence of the wife of the grantor *held* not to be proved.

3. **Equity:** LAND: CLOUD ON TITLE. A court of equity will entertain a bill to remove a cloud on title to land in behalf of persons not in possession, if they have no adequate remedy at law.

4. ———: ———: ———. The jurisdiction in equity to remove a cloud on title is not only remedial but preventive.

Sneathen v. Sneathen.

5.  **Deed, Delivery of**: LIFE OF GRANTOR. The delivery of a deed is an essential element of a valid transfer of title to real estate and it must take place during the life of the grantor ; for a deed cannot be made to perform the functions of a will.

6.  **Deed**: DELIVERY TO THIRD PERSON. The delivery, however, need not be made to the grantee in person.

7.  ———— : ————. A deed delivered by the grantor to a third person to be delivered to the grantee, and by such third person delivered to the grantee, will constitute a good delivery, though the grantor is dead at the date of the last delivery ; for the delivery takes effect by relation as of the date when first made to the third person.

8.  ———— : ————. It should appear in the foregoing case that the grantor parted with all dominion and control over the instrument, intending it to take effect and pass title as a present transfer, and this intention may be indicated by acts or words, or by both.

9.  ———— : ————. The rule that the grantor must part with all dominion and control over the deed does not mean that he must put it out of his physical power to procure repossession of it.

10.  ———— : WIFE OF GRANTOR. The wife of the grantor may be the third person to whom the grantor can deliver a deed for the grantee.

11.  ———— : ACCEPTANCE : INFANT GRANTEES : PRESUMPTION OF. When the grantees are infants the law presumes assent on their part to a beneficial conveyance, and knowledge of the same and its delivery are not essential.

*Appeal from DeKalb Circuit Court.*—HON. JOS. P. GRUBB, Judge.

REVERSED.

*Samuel G. Loring* for plaintiffs in error.

(1)  The plaintiffs nowhere allege, directly or by implication, that they or either of them were in the possession of the lands in controversy, and there is nothing, if the allegations of the petition are true, to prevent them from successfully prosecuting their suit by ejectment. *Graves v. Ewart*, 99 Mo. 13 ; *Davis v. Sloan*, 95 Mo. 552 ; *Dyer v. Bannock*, 66 Mo. 216 ; *Clark v. Ins. Co.*, 52 Mo. 270 ; *Gage v. Griffin*, 103 Ill. 41 ; *Gage v.*

*Abbott*, 99 Ill. 366 ; *Harden v. Jones*, 86 Ill. 313. ( 2 )
The petition itself admitted the delivery of the deed and
the only issue presented was that of its procurement by
"fraud, threats and undue influence." ( 3 ) The court
erred in finding the issues in the case for the plaintiffs.
There were no relations of confidence or trust in the
case, and by the pleadings the issue was upon the plain-
tiffs to prove either that William Sneathen had not at
the time of the execution of said deed the mental
capacity to make it, or that said deed was obtained by
the use of fraud, threats or undue influence upon the
part of Mrs. Sneathen or some one else. *McKinney v.
Hensley*, 74 Mo. 331 ; *Wood v. Broadley*, 76 Mo. 32 ;
*Brinkman v. Rueggesick*, 71 Mo. 556. ( 4 ) The fact
( if proven ) that Mrs. Sneathen had an influence over
the mind of her husband, growing out of their marital
relations, is no objection to the validity of said deed
unless that influence was used to procure it. *Rankin v.
Rankin*, 61 Mo. 300 ; *Jackson v. Hardin*, 83 Mo. 185.
And must be shown to exist at the time of its execu-
tion. *Tingley v. Cowgill*, 48 Mo. 291. The influence
denounced by law must be such as amounts to over-
persuasion, coercion or force, destroying at the time of
the ·execution of said deed the free agency and will
power of the grantor, William Sneathen. *Jackson v.
Hardin*, 83 Mo. 185. ( 5 ) Though a delivery of a deed
is essential to its validity, yet that delivery may be
either an actual or a verbal one. It is sufficient if there
is an intention or assent of the mind of the grantor to
treat the instrument as a deed and clothe it with all the
attributes of a legal instrument. *Farrah v. Bridges*, 5
Humph. 411 ; *Miller v. Tullman*, 81 Mo. 316 ; *Huey v.
Huey*, 65 Mo. 690 ; *Cook v. Brown*, 34 N. H. 460 ;
*Standiford v. Standiford*, 97 Mo. 233 ; 1 Greenl. Ev.,
sec. 297. ( 6 ) A deed in the possession of the grantee
is presumed to have been delivered, possession being
*prima facie* evidence of delivery. *Greer v. Tarnal*, 6
Mo. 326 ; 13 Cent. Law Jour. 224 ; *Reed v. Douthitt,*

62 Ill. 350; *Tunison v. Chamblen*, 88 Ill. 378; *Boodey v. Daves*, 20 N. H. 140. (7) The deed constituted a voluntary settlement of the grantor's property preparatory to his death. *Boughton v. Boughton*, 1 Atk. 625; *Sanverbye v. Arden*, 1 Johns. Ch. 240; *Johnson v. Smith*, 1 Ves. 314; *Jones v. Jones*, 6 Conn. 111; *Newton v. Bealer*, 41 Iowa, 339; *Masterson v. Cheek*, 23 Ill. 76. (8) Under the allegations of the petition, Perdilla Sneathen, even if never married to William Sneathen, had no right to the possession of said lands after the death of William Sneathen. *Graves v. Ewart*, 99 Mo. 13.

*Stephen S. Brown* for defendants in error.

(1) The homestead or life interest of Perdilla Sneathen having been reserved to her in the deed to the Andersons, and she being entitled to the possession of the property during her lifetime, the plaintiffs had no remedy at law to test the validity of the deed. 1 Story's Eq. Jur. [12 Ed.] sec. 700 and note 4; 3 Pomeroy's Equity, secs. 1333, 1399, and note 4. (2) The deed in question purports to be the act of Sneathen and wife on the one side and the Anderson boys on the other. The fact that it only conveys an estate in remainder can in no way affect its character as a contract between the grantors and the grantee, which must be executed by signing, sealing and delivering it. At any time during this process the grantor is at liberty to change his mind. The instant the deed is delivered, the title which it purports to convey passes from the grantor. The question in all these cases is, would the title remain in the grantor should he destroy the deed with the intent that it should so remain? (3) It is necessary to the validity of the deed that there should have been a delivery in the lifetime of the grantor. *Huey v. Huey*, 65 Mo. 689; *Hammerslough v. Cheatham*, 84 Mo. 13; *Turner v. Carpenter*, 84 Mo. 333.

BLACK, J.—William Sneathen died on April 25, 1881. Prior thereto and on March 24, 1881, he and his wife, Perdilla, executed a deed purporting to convey the home place, consisting of one hundred and twenty acres of land, to Malcom Anderson, Emory Anderson and William Anderson, who are the grandchildren of William Sneathen, by his first marriage, the grantors reserving in the deed a life-estate to themselves. The plaintiffs in this case are also children and grandchildren of William Sneathen by his first marriage, and by this suit they seek to set aside that deed.

The substantial averments of the petition are: That, though Perdilla was the lawful wife of one Moore, yet she and William Sneathen lived and cohabitated together from 1860 to his death; that she by the use of fraud and threats and undue influence persuaded and compelled him to make the deed; that he failed to deliver the deed during his lifetime, and after his death she procured and delivered the same to the grantees therein named.

1. The evidence shows that William and Perdilla were married in 1860. She then supposed her former husband was dead, but, hearing that he was still living, she commenced proceedings for divorce, pending which she received reliable information that he was dead.

The divorce proceedings were then dismissed, and she and Sneathen were again married. With this evidence, and it is all there is upon the subject, it must be held that she was the lawful wife of Sneathen for many years prior to his death.

2. The evidence bearing upon the question of fraud, compulsion and undue influence shows that this and other deeds made by the deceased at the same time cut off plaintiffs from any portion of their father's real estate. He was seventy-eight years old when the deeds were made. While age had brought about physical infirmities and to some extent weakened his mental

capacity, still he rode about his farm, looked after his stock, and could and did attend to his ordinary business affairs. There is no reliable evidence of compulsion or fraud on the part of the wife. It is sufficient to say that the issue of fraud, compulsion and undue influence tendered by the plaintiffs stands unproved. On the contrary, it is disproved by all the trustworthy evidence in the case.

3. The defendants insist that this is a suit to remove a cloud from the plaintiffs' alleged title as heirs, and that the suit cannot be maintained because the plaintiffs are not in possession ; and in support of these propositions we are cited to *Davis v. Sloan*, 95 Mo. 552, and *Graves v. Ewart*, 99 Mo. 13. If those cases are examined with any degree of care it will be seen that a suit in equity to remove a cloud from a title may be maintained in those cases where the plaintiffs have no adequate remedy at law. So in *Keane v. Kyne*, 66 Mo. 216, the plaintiff had a remedy at law. Although the plaintiffs are not in possession, still if they have no remedy at law, a court of equity will entertain a bill to remove the cloud. Story, Eq. Jur. [ 12 Ed. ] sec. 700, note 4; Pomeroy Eq. Jur., sec. 1399, note 4.

The property in question was the homestead of the deceased, and the widow who is a defendant in this case has a homestead right therein, though the deed is invalid, and this right is exclusive in her, since the children are all adults. Besides this the widow has the right to remain in possession of the mansion house and plantation thereto belonging, until dower is assigned to her, and that has not been done in this case. For these reasons the plaintiffs cannot recover in ejectment, even if the deed should be held to be of no validity, and they, therefore, have no remedy at law.

The jurisdiction in equity to remove a cloud is not only remedial, but it is also preventive. It is right and proper that the question as to the validity of the deed should be determined while the evidence is at hand,

and if it is invalid it should be so declared, so as to prevent distant vexatious litigation.  Story, Eq. [12 Ed.] sec. 700; *Gardner v. Terry*, 99 Mo. 523.

4.  The real question in this case is that concerning the alleged non-delivery of the deed.  The evidence bearing upon this issue is in substance this:  William Sneathen owned and resided upon the one hundred and twenty acres of land now in question, and he also owned another forty-acre tract.  His wife, Perdilla, owned another forty acres and also a one-fifth interest in her deceased father's estate.  Sneathen went to a justice of the peace and requested him to prepare four deeds, at the same time explaining the reason why he desired to execute them.  There was no haste in the matter, and in about four weeks thereafter the justice prepared the deeds and took them to the Sneathen residence as requested, where they were all executed and acknowledged at the same time on March 24, 1881.

Besides the deed in question, Sneathen and his wife executed another conveying to Jennie Brown the forty-acre tract owned by Mr. Sneathen.  Jennie Brown was a married daughter of Mrs. Sneathen by her first marriage.  This deed also reserved to the grantors a life-estate.  The other two were deeds of quitclaim releasing to Mrs. Sneathen the forty acres owned by her and her interest in her father's estate.  The justice testified:  "After the deeds were made Mr. Sneathen asked me who should pay for the recording.  I replied it was customary for those receiving them to pay for the recording.  He then started for the press with them; then he said: 'What shall I do with them?'  Before I had time to answer he turned to Mrs. Sneathen and said: 'Here are your deeds; and give the others their deeds the first time you see them.'  She took the deeds and put them away, with the remark that she would give them the deeds the first time she saw them."

The evidence of Mrs. Sneathen is in these words: "After he had executed the Anderson deed, he handed

the deed to me and told me to put it away and give it to Malcom Anderson, or his brothers, the grantees therein, the first time they came up. And the first time I saw them I gave it to them. I placed the deed away in a trunk with his other papers. After I had put the deed away he never called for it and it remained uninterruptedly in that place until I gave it to them."

And Malcom Anderson, one of the grantees, says: "On Sunday that my grandfather was buried and after the burial, I saw this deed; had not seen it before; the deed was handed me by Mrs. Perdilla Sneathen. I took it home with me; Mrs. Sneathen was lying on the bed at her house, and the deed was on the bed at her side. She handed it to me and said: 'Now, all I want is my life-estate.'"

There is other evidence to the effect that after the death of Mr. Sneathen, and on the day of the funeral Mrs. Sneathen requested Jennie Brown to get the deed out of a little trunk; that she got it and gave it to Mrs. Sneathen who gave it to Wm. Anderson, the father of the grantees; that he examined it and gave it back to Mrs. Sneathen who then handed it to Malcom Anderson, one of the grantees, and he caused it to be recorded. It appears the deed to Jennie Brown was placed in her possession shortly after its execution. Her husband testified that he went to Stewartsville, where the Anderson boys resided with their father, with Mr. Sneathen, after these deeds had been executed, and on that trip Sneathen said, "He wished he had got the deed to the Anderson boys and brought it down with him and given it to them." While at Stewartsville Sneathen inquired for Malcom, saying he wanted to see him, but Malcom was not at home. The record shows that two of the boys, namely, Emory and William, defended this suit by guardian, so they must have been minors when the deed was executed, and we infer that Malcom was also a minor at that date.

Delivery of a deed is, of course, an essential element of a valid transfer of title to real estate, and it must take place during the life of the grantor; for a deed cannot be made to perform the functions of a will. But the delivery need not be to the grantee in person. A deed delivered by the grantor to a third person to be delivered to the grantee, and by such third person delivered to the grantee, will constitute a good delivery, though the grantor is dead at the date of the last delivery; for the delivery takes effect by relation as of the date when first made to the third person. In such cases it should appear that the grantor parted with all dominion and control over the instrument, intending it to take effect and pass the title as a present transfer. This intention may be manifested by acts, or by words, or by both words and acts. *Burke v. Adams*, 80 Mo. 506; *Standiford v. Standiford*, 97 Mo. 231; Tiedeman on Real Prop., sec. 814. We do not consider in the foregoing propositions those cases where the deed is placed in escrow, for there is no evidence of an escrow in this case.

Now when the deed in question and the one to Jennie Brown were executed and acknowledged, Sneathen gave them to his wife with directions to put them away and give them to the grantees the first time she saw them. There were no conditions whatever attached to this delivery to her. He parted with them without any reservation. The evidence shows, too, that he had determined to convey all of his real estate to these grantees, and that all of the deeds were executed and acknowledged pursuant to that formed and expressed design. The fact that these two deeds reserved a life-estate to the grantor and his wife is evidence that he intended they should take effect as conveyances before his death. It is true, that Mrs. Sneathen placed the deed in a trunk with the grantor's other papers where he could repossess himself of them if

he desired to do so.   But the rule that the grantor must part with all dominion and control over the deed does not mean that he must put it out of his physical power to procure possession of it.   It is sufficient that the deed is delivered to the third person for the grantee without reservation and with the intention that it shall take effect and from that time operate as a transfer of the title.

Cases are not wanting where a delivery has been held to be good though the grantor retained possession of the document.   The intention is the important element and as we have said that may be manifested by acts or words or both.   The circumstance that Sneathen on the trip to Stewartsville expressed to Mr. Brown a regret that he had not brought the deed with him and given it to the boys does not tend to show that there had not been a delivery to his wife for them, but rather tends to show that he regarded the transfer of the title to them as a fixed fact.   The circumstances under which the deed was made and the directions given by Sneathen when he handed it to Mrs. Sneathen show quite conclusively that he then parted with all control over it, and intended that it should operate as a present transfer of the title to the land.

No suggestion is made, nor do we see any reason, why the wife of the grantor may not be the third person, within the rules before stated, to whom the deed is delivered for the grantees.

The evidence shows beyond all doubt that the Anderson boys, the grantees, knew nothing of the deed until after the death of their grandfather, the grantor; but this fact does not affect the result, for they were minors and the deed was manifestly to their advantage. When the grantees are infants, the law presumes assent on their part to a beneficial conveyance, and knowledge of the conveyance and delivery is not essential.   *Tobin v. Bass*, 85 Mo. 654 ; *Standiford v. Standiford, supra ;* Tiedeman on Real Prop., sec. 814.

Gurley v. The Mo. Pac. Ry. Co.

There is nothing in the cases of *Huey v. Huey*, 65 Mo. 689, and *Hammerslough v. Cheatam*, 84 Mo. 13, to which we are cited by the defendants in error, which is in conflict with what has been said. Indeed, the principles of law asserted in those cases, so far as they are applicable to this case, are in accord with the rules of law here declared. It appears the circuit court decided this case on the theory that there had been no delivery of the deed in question, and in this ruling the court erred. As the court erred in this respect and as the decree cannot be supported on any or all of the other allegations in the petition, the judgment is reversed and the petition dismissed for want of equity. The other judges concur.